Evelyn Hickok v. Commissioner. Estate of C. W. Hickok, Deceased, Evelyn Hickok, Administratrix with the will annexed v. Commissioner.
Hickok v. Commissioner
Docket Nos. 26991, 26992.
United States Tax Court
1952 Tax Ct. Memo LEXIS 360; 11 T.C.M. (CCH) 4; T.C.M. (RIA) 52005; January 2, 1952
*360 Thomas O'Hara, Esq., and Alfred R. Peaks, Esq., 1714 Capitol Ave., Sacramento, Calif., for the petitioners. Charles W. Nyquist, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: These proceedings involve deficiencies in income tax and additions to tax for fraud as follows: Deflciencies
Docket No.
Year
Tax
Penalty
26991 Evelyn Hickok
1945
$35,346.99
$17,673.50
26992 Estate of C. W. Hickok
1945
35,348.58
17,674.29
January 1 to May 21
1947
391.45
The questions remaining for determination are (1) whether a limited partnership under the name of "C. W. Hickok of San Francisco" with C. W. Hickok as a general partner and Evelyn Hickok and one Marvin Sherwin as limited partners, existed in 1945, (2) if so, did the partnership properly file its first return of income for the period March 17, 1945 to July 31, 1945, and a second return for the "fiscal year beginning August 1, 1945 and ending January 31, 1946," (3) whether the respondent properly disallowed for 1945 a claimed deduction of $4,750 for salaries paid, and (4) whether the respondent erred in treating as income to C. W. Hickok for *361 1947 one-half of an amount of cash found in a safe deposit box after his death in that year. With respect to the additions to tax for fraud the parties have stipulated that as to C. W. Hickok there was fraud but as to Evelyn Hickok there was no fraud. All other issues have been settled by stipulations or concessions by the parties. Findings of Fact A portion of the facts have been stipulated and are found accordingly. Evelyn Hickok, a resident of North Sacramento, California, is the widow of C. W. Hickok. C. W. Hickok died May 21, 1947, and Evelyn Hickok is the duly appointed administratrix of his estate. During the years here in question C. W. Hickok also resided in North Sacramento, California. The income tax returns of Evelyn Hickok and C. W. Hickok were made on a community property basis and were filed with the collector of internal revenue for the first district of California. Prior to 1945, C. W. Hickok designed or invented a metal wrist watch band on which he applied for a patent. The patent was never issued. However, in 1945 he began the manufacture and sale of said band. On October 13, 1945, there was filed with the County Clerk of the County of San Francisco, *362 California, an instrument entitled "Certificate of Limited Partnership," dated March 17, 1945, and executed by C. W. Hickok, his attorney, Marvin Sherwin, and Evelyn Hickok. The certificate recited that the name of the partnership was "C. W. Hickok of San Francisco," that the character of the business was the manufacture and sale of metal products, that the location of the principal place of business was No. 915 Shreve Building, San Francisco, California, that C. W. Hickok was the general partner, that Sherwin and Evelyn Hickok were limited partners, that Sherwin had contributed $1,000 in cash to the firm and Evelyn Hickok had contributed $6,000 in cash, that the income and profits of the partnership were to be shared equally by the three partners, and that upon the death, retirement or insanity of the general partner the partnership should be liquidated unless agreed otherwise by the limited partners. The books kept for the business conducted under the name of "C. W. Hickok of San Francisco," sometimes hereafter referred to as the firm, contain no record of the payment of the recited cash contributions of $6,000 by Evelyn Hickok and $1,000 by Sherwin. An account designated "Capital *363 Subscriptions" was, under date of March 17, 1945, debited with the entire amount of $7,000 but on January 31, 1946, the account was balanced out by credit entries representing transfers from the capital accounts of Sherwin and Evelyn Hickok of profits then appearing in those accounts. By a written contract dated April 3, 1945, exclusive sales rights on the wrist watch band manufactured by Hickok were given to James G. Flatau, a jewelry jobber of Chicago, Illinois, who at that time advanced $5,000 on an unsecured loan. The contract recites that it was entered into by and between "C. W. Hickok of San Francisco, a limited partnership, of which C. W. Hickok is the sole general partner," as first party, and James G. Flatau, as second party. The contract was signed by C. W. Hickok in behalf of the first party and by Flatau as second party. C. W. Hickok employed O. W. Hinton, a public accountant, to set up a bookkeeping system for the firm and to supervise the keeping of its books from June 1945 to October 1945. In the books set up by Hinton, capital accounts and drawing accounts were maintained in the names of C. W. Hickok, Evelyn Hickok and Sherwin. During the time of his employment *364 Hinton understood that the business was on a calendar year basis and he so maintained the books of account. Accordingly, he made no closing of the books on, or as of July 31, 1945. In October 1945, the firm employed W. A. Pressley as bookkeeper and he thereafter kept its books. On some undisclosed date following his employment but prior to January 15, 1946, and for reasons not shown, Pressley made a closing of the books as of July 31, 1945. On January 15, 1946, there was filed with the collector for the first district of California a partnership return of income, Form 1065, in the name of "C. W. Hickok of San Francisco," covering a period beginning March 17, 1945, and ending July 31, 1945, and showing a net income of $60,345.08 for the period. On December 20, 1946, there was filed a similar return covering a period beginning August 1, 1945, and ending January 31, 1946, and showing a net income of $75,773.15 for the period. These returns were executed by C. W. Hickok. They recited that the partnership was organized on March 17, 1945, showed C. W. Hickok, Evelyn Hickok and Sherwin as the members thereof and their respective interests in the net income reported thereon as being one-third. *365 On March 13, 1946, C. W. Hickok and Evelyn Hickok filed separate individual income tax returns for the calendar year 1945, in which they reported as income from "C. W. Hickok of San Francisco" the amounts of their distributive shares of income as shown in the partnership return covering the period beginning March 17, 1945 and ending July 31, 1945. The amount so reported in the return of C. W. Hickok was the only item of income shown in his return. In the return of Evelyn Hickok an additional item of approximately $995 was reported as rent received from a store and gas service station acquired in June 1945, at a cost of $15,000. Using the name of Salley Riley Spokley, Evelyn Hickok, on March 13, 1946, filed with the collector for the first district of California an income tax return for the calendar year 1945. Salley Riley Spokley was her name prior to her marriage to C. W. Hickok. The only item of income reported on this return was $1,750 as compensation from "C. W. Hickok of San Francisco." Her occupation was shown on the return as "Public Relations." Form W-2, withholding receipt, showing such employment and salary and tax withheld of $385.70 was attached. The tax was shown *366 on the return as $250, payment of tax by withholding as $385.70 and an overpayment of $135.70, which it was requested be refunded. On the basis of the return $135.70 was refunded. The address shown on this return was the business address of C. W. Hickok's sister, which was also the mailing address of "C. W. Hickok of San Francisco." C. W. Hickok caused to be drawn and charged in 1945 as business expenses of "C. W. Hickok of San Francisco" incurred as salaries, checks made payable to the following individuals with the dates and in the amounts indicated: Date
Amount
Total
D. E. Warrington
11/ 2/45
$152.20
11/14/45
161.30
11/30/45
152.20
12/14/45
152.20
12/28/45
152.20
$ 770.10
S. R. Spokley
9/25/45
$189.90
9/29/45
189.90
10/18/45
189.90
11/ 2/45
189.90
11/14/45
189.90
11/30/45
189.90
12/14/45
189.90
1,329.30
M. C. Hickok
10/18/45
$235.70
11/ 2/45
235.70
11/14/45
235.70
11/30/45
235.70
12/14/45
235.70
12/28/45
235.70
1,414.20
Total
$ 3,513.60 Other similar salary checks were issued in 1946 in the names of the same three individuals. The above-stated amounts represent *367 the net amounts that would be due, after tax withholding on salary payments of $200 each to D. E. Warrington, $250 each to S. R. Spokley, and $300 each to M. C. Hickok. The amounts charged with respect to the checks set forth above were taken as deductions in the income return filed for "C. W. Hickok of San Francisco" for the period beginning August 1, 1945, and ending January 31, 1946. Miss D. E. Warrington was a long time acquaintance of C. W. Hickok but never was an employee of "C. W. Hickok of San Francisco." She may have endorsed checks for C. W. Hickok at his request. Whether the other two above-named individuals ever received the sums set forth in the checks drawn payable to them is not disclosed. The books and records of "C. W. Hickok of San Francisco" show a cash balance of $75,721.10 on February 28, 1946 and $59,164.51 on March 31, 1946. On August 23, 1946, C. W. Hickok, using the name of W. G. Stewart, rented a safe deposit box from the American Trust Company in San Francisco. According to the records of that company he entered the box twice in 1947, once on May 5 and again on May 13. After his death on May 21, 1947, the box was opened and found to contain $20,650 *368 in cash which was turned over to, and became part of, his estate. An examination of the books and accounts of "C. W. Hickok of San Francisco" does not disclose a withdrawal of such a sum by C. W. Hickok during the period from August 1946 to the time of his death. On or about December 24, 1946, C. W. Hickok purchased certain real property situated in Sacramento, California, paying $5,500 therefor and taking title thereto under the name of James Hazen. In determining the deficiencies involved herein the respondent determined that no partnership existed between C. W. Hickok, Evelyn Hickok and Sherwin in the conduct of the metal wrist watch band business and that the income of that business was the community income of C. W. Hickok and Evelyn Hickok. He further determined that, as shown by the books, the net profit for the period March 17 to December 31, 1945, was $131,042; that of the deductions used in computing such profit, $4,750 was not deductible as salary because it represented payments to fictitious employees and $7,512 was not deductible as travel expenses for lack of substantiation of payment for such purpose; that the profit as so adjusted, $143,304, was to be reduced by *369 $5,025 representing a "distribution" to Sherwin; and that of the correct income from the business as so determined for the period, $138,279 one-half was taxable to each C. W. Hickok and Evelyn Hickok as their respective shares of community income for 1945. In determining the deficiency in C. W. Hickok's tax for the period January 1 to May 21, 1947, the respondent determined that the $20,650 in cash found in his safe deposit box constituted taxable community income for that period and included one-half of that amount, $10,325, in his taxable income. C. W. Hickok, Evelyn Hickok and Sherwin did not at any time in 1945, in good faith and acting with a business purpose, intend to join together as partners in the present conduct of the business carried on under the name of "C. W. Hickok of San Francisco." Opinion As to the existence in 1945 of "C. W. Hickok of San Francisco" as a limited partnership with C. W. Hickok as a general partner and Evelyn Hickok and one Marvin Sherwin as limited partners, the decision must be for the respondent. The evidence relied on to establish the existence of the partnership consists of the two returns of income purporting to show the conduct of the *370 business as a partnership, the "Certificate of Limited Partnership" which, although bearing date of March 17, 1945, was not filed with the County Clerk of San Francisco until October 13, 1945, the sales contract with Flatau purporting to be the contract of a partnership of the above name, the assertions as to the existence of the partnership appearing in the individual returns of C. W. Hickok and Evelyn Hickok and the testimony of witness Peaks as to the existence of books of account in the claimed partnership named. On the other hand, there is nothing to show that whatever the business carried on by C. W. Hickok that Evelyn Hickok or Sherwin actually participated therein in any way as partners. There is no showing or claim that they rendered any services. Presumably their contributions were to be in the form of capital only and they were not intended to participate personally in the conduct of the business since the claim is that they were limited partners only. Purportedly, Evelyn Hickok was to have contributed $6,000 as her share of capital and Sherwin was to have contributed $1,000 as his share. Petitioners admit that there is no proof that these sums were ever paid and in the *371 circumstances, we think clearly that they were not. Neither Sherwin nor Evelyn Hickok, the latter being present in the court room at the time of the trial, was called as a witness. The petitioners put some reliance upon the proposition that the respondent in his determination of the net income from the business for 1945 and for 1946, the latter year not being before us, has allowed exclusions or deductions from gross income of $5,025 and $5,300, respectively, as covering the "distribution to Marvin Sherwin." There is some indication that Sherwin was an attorney who at some time acted as counsel for Hickok, and further that in a subsequent year when some property which had belonged to Hickok was sold, Sherwin received some portion of the proceeds. Taking into account, however, the amount of net profits shown as realized by Hickok in the wrist watch band business and the fact that under the partnership agreement, as claimed by the petitioners, Sherwin would have been entitled to one-third of the net profits, the receipts of the amounts in question by Sherwin certainly are not sufficient to establish the existence of the claimed partnership, and the allowances made by the respondent *372 in his determinations with respect to the payments or distributions to Sherwin are not such that they may be regarded as a concession by the respondent of the existence of the claimed partnership. Not only does the evidence fail to establish the existence of a partnership as claimed, but it is our opinion from the picture disclosed thereby, and we have found as a fact, that C. W. Hickok, Evelyn Hickok and one Marvinsherwin did not at any time in 1945 in good faith and acting with a business purpose intend to join together as partners in the present conduct of the business. The claim of partnership is accordingly denied. . Having concluded that there was no partnership as claimed, the issue as to whether such a partnership, if it had existed, was entitled to report income on the basis of a fiscal period ending July 31, 1945, becomes fictional. With respect to the disallowance for 1945 of the claimed deduction of $4,750 as salaries paid, the only facts shown of record are those appearing in the stipulation of the parties to the effect that Miss D. E. Warrington was a long time acquaintance of Hickok and that if called as a witness *373 would testify that she never was an employee of the business although she may have endorsed checks for Hickok if he asked her to do so, and further that she does not remember ever having received any money from the business. There is no showing at all as to the payments claimed to have been made to S. R. Spokley and M. C. Hickok. Such being the state of record, the respondent's action is approved. The respondent determined that the $20,650 in cash found in C. W. Hickok's safe deposit box after his death constituted taxable income in 1947. No evidence was offered by the petitioners as to the source of, or as to the date or dates when, or the manner in which Hickok obtained the money. However, on brief they contend that the foregoing determination is refuted by another determination of the respondent, namely, that for the period January 1 to May 21, 1947, the gross income of the metal wrist watch band business was only about $2,900 and that a net loss of approximately $16,000 was sustained during the period. The petitioners urge that it is hardly believable that in the face of such a loss in business operations Hickok would have earned income in excess of $20,000 in a period of four *374 and one-half months. This argument, based on some known factors and implying the improbable correctness of the respondent's determination that the money was income in 1947, loses its force when considered in connection with the showing by the record of Hickok's propensity for participating in transactions under various assumed names and for creating records purporting to reflect situations that were contrary to actual fact. In the absence of evidence establishing error, the respondent's action on this issue is sustained. Decisions will be entered under Rule 50.